UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

NORMA ARCAUTE,

       Plaintiff,                                             Case No.  1:15-cv-755

v.

                                                              HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                                       /

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Norma Arcaute seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 60 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.31, 54.) She obtained a high school education and was previously employed as a janitor, assembler, and quality inspector. (PageID.60, 97–98.) Plaintiff applied for benefits on October 20, 2010, alleging that she had been disabled since December 1, 2009, due to problems associated with her back, knee, and hip, as well as complaints associated with limited movement on the left side of her body.[1] (PageID.108.) Plaintiff's application was denied, after which time she

---

[1] Plaintiff also filed an application for supplemental security income (SSI). (PageID.250–54.) The record does not contain an administrative decision regarding this application, and the ALJ's decision concerns only Plaintiff's DIB application. The Court notes Plaintiff's brief contains no

requested a hearing before an ALJ. (PageID.138–41, 146–47.) On February 8, 2012, Plaintiff appeared with her counsel before ALJ Paul Jones. (PageID.53–70.) In a written decision dated March 9, 2012, the ALJ determined that Plaintiff was not disabled. (PageID.122–29.) On June 22, 2013, however, the Appeals Council remanded the case for further factual findings. (PageID.133–35.) A second administrative hearing was held on December 11, 2013, at which both Plaintiff and a vocational expert (VE) testified. (PageID.71–106.) On January 17, 2014, ALJ Jones issued a second written decision finding Plaintiff was not disabled. (PageID.31–50.) On May 20, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.23–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 2012. (PageID.108). Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[2] If the Commissioner can make a dispositive finding at

---

argument regarding the SSI application and mentions only her DIB claim. (PageID.576–77.)

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which

any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In his second decision, ALJ Jones determined Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through her date last insured. (PageID.37.) At step two, the ALJ determined Plaintiff had the severe impairment of lumbago. (PageID.37.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.40.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments through her date last insured to perform the

---

meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

full range of light work as defined in 20 CFR § 404.1567(b). (PageID.40.) Continuing with the fourth step, the ALJ determined that through her date last insured, Plaintiff was able to perform her past relevant work as an assembler and quality inspector both as they were actually and generally performed. (Page46.) Having made his disability determination at step four, the ALJ ended his analysis and was not required to go further.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from December 1, 2009 through December 31, 2012. (PageID.46.)

## DISCUSSION

### 1. The ALJ Properly Evaluated Plaintiff's Impairments.

As noted above, the ALJ determined that Plaintiff suffered from the severe impairment of lumbago. Plaintiff argues, however, that she is entitled to relief because the ALJ's determination that she suffered from lumbago is "inaccurate and contrary to the medical evidence contained in the administrative record." (PageID.588.) Plaintiff further argues the ALJ should have found that she also suffered from additional severe impairments of degenerative disc disease, herniated lumbar discs, bulging lumbar discs, lumbar radiculopathy, and lumbar lordosis. (PageID.588–89.)

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also, Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 n.2 (6th Cir. 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Step two of the sequential disability process is considered a "de minimis hurdle" designed to subject to dismissal only those claims which are "totally groundless" from a medical standpoint. *Rogers*, 486 F.3d at 243 n.2; *Despins*, 257 F. App'x at 929; *Higgs*, 880 F.2d at 860. "[T]his lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. Jan. 9, 2001) (quoting *Higgs*, 880 F.2d at 862).

The Court does not find the ALJ's determination that Plaintiff suffered from the severe impairment of lumbago is inaccurate nor contrary to the medical evidence. Indeed the record evidence is replete with the diagnosis of lumbago. (*See, e.g.,* PageID.317, 319, 407, 474.) Lumbago

6

was listed as the reason for her December 2, 2011, MRI exam. (PageID.567.) All this was sufficient by which the ALJ could find Plaintiff suffered from the severe impairment of lumbago. Accordingly the Court finds no error.

Regarding Plaintiff's remaining argument, the Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error"). As Plaintiff admits, the ALJ found lumbago to be a severe impairment and continued through the sequential analysis. A review of the ALJ's decision makes clear that in doing so, the ALJ considered the entire record and all of Plaintiff's impairments and limitations. Accordingly, this argument is rejected, and Plaintiff's first claim of error fails.

### 2. The ALJ Properly Determined Plaintiff's RFC.

Plaintiff secondly claims the ALJ's determination that Plaintiff is capable of performing a full range of light work is unsupported by substantial evidence because he failed to give adequate weight to the opinions of Dr. Elmer Novis and Dr. Ryan O'Connor, impermissibly substituted his own judgment of the medical evidence in discounting their opinions, and relied on improper boilerplate in discounting her subjective allegations. The Court disagrees.

#### A. Medical Opinions.

On May 9, 2011, Dr. Elmer Novis completed a check-box worksheet regarding

7

Plaintiff's physical RFC. Among other things, he opined that Plaintiff was incapable of even low stress jobs, and her pain and other symptoms would frequently interfere with her attention and concentration. (PageID.353.) Plaintiff could only sit, stand, or walk for less than two hours total in an eight-hour workday. (PageID.354.) Plaintiff would need to shift positions at will, take unscheduled breaks, and elevate her legs to ninety degrees when sitting. (PageID.354.) Plaintiff could only rarely lift and carry twenty-pound weights and occasionally lift and carry ten-pound weights. (PageID.344.) Plaintiff could never climb stairs or ladders, crouch or stoop. Finally, the doctor indicated Plaintiff would likely miss more than four days of work per month. (PageID.355.)

On October 13, 2013, Dr. Ryan O'Connor filled out an identical worksheet. He also opined that Plaintiff's pain and symptoms would frequently interfere with her attention and concentration, but he opined that Plaintiff was capable of moderate stress work. (PageID.503.) Plaintiff could sit for a total of two hours in a workday, and stand or walk for less than two hours. (PageID.504.) Plaintiff would need to be able to shift positions at will and take unscheduled breaks. (PageID.504.) Plaintiff could rarely lift and carry less than ten-pound weights and never lift or carry heavier weights. (PageID.504.) Plaintiff could never climb stairs or ladders, crouch or stoop. (PageID.505.) Finally, Dr. O'Connor expected that Plaintiff would miss about two days of work per month. (PageID.505.) The ALJ gave both Dr. Novis' opinion and Dr. O'Connor's opinion only "little weight." (PageID.45.) Plaintiff argues the ALJ should have afforded more weight to their opinions because they were consistent with the record. (PageID.590–92.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that the two doctors qualify as treating physicians.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ found that Dr. Novis' opinion was inconsistent with the doctor's treatment notes and Plaintiff's reported daily activities. (PageID.45.) The Court finds this determination to be supported by substantial evidence. For example, while physical examinations did demonstrate a decreased range of motion of Plaintiff's left hip and some spinal tenderness, she consistently demonstrated normal gait and station, stability, and muscle strength and tone. (PageID.316, 320, 325, 397, 402.) The ALJ noted that these findings were inconsistent with the severe limitations recommended by Dr. Novis. The ALJ also noted that Dr. Novis' recommendations were inconsistent with Plaintiff's activities of daily living. The record shows that during the relevant time period Plaintiff reported being able to assist with preparing meals and doing laundry. (PageID.68–69.) On her function report, Plaintiff reported she was able to cook, do light housework, laundry, drive, run errands, and take care of her grandchildren. (PageID.295.) She had no problem with her personal care. (PageID.296.) Her daily activities include reading, watching TV, playing card games and bowling, and she stated there were not "too many changes" in these activities since her onset. (PageID.299.) She spends time with others by going out to meals and visits, attending church, and going to the casino one to two times a month. (PageID.299.) The ALJ did not err in finding these activities inconsistent with the limitations provided by Dr. Novis. Accordingly, the Court finds the ALJ provided good reasons, supported by substantial evidence, for discounting Dr. Novis' opinion.

The ALJ applied the above reasons to the similar opinion of Dr. O'Connor. In addition, the ALJ noted that Dr. O'Connor had first seen Plaintiff on July 15, 2013, more than six months after Plaintiff's date last insured. His opinion was completed more than seven months after the date last insured. (PageID.502–05.) Evidence of a claimant's medical condition after the date last insured is only considered to the extent it illuminates that condition before the expiration of the

claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (where a doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("[e]vidence of disability obtained after the expiration of insured status is generally of little probative value"). The ALJ's decision to assign little weight to Dr. O'Connor's opinion is supported by substantial evidence.

Finally, the ALJ did not substitute his own lay opinion of the medical evidence in evaluating the above opinions, as Plaintiff claims. (PageID.592.) "[A]n ALJ does not play doctor by evaluating the medical evidence because he is required to do so under the regulations." *Wilkins v. Comm'r of Soc. Sec.*, No. 13–12425, 2014 WL 2061156, at *14 (W.D. Mich. May 19, 2014) (citing 20 C.F.R. § 404.1527(c)). "Rather, an ALJ may properly consider the lack of objective evidence supporting [the doctor's] opinion," and the "inconsistency of his opinion with objective testing results." *Wilkins*, 2014 WL 2061156, at *14. The ALJ may elect to give less weight to an opinion when it fails to find support in the objective evidence and the other record evidence. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014); 20 C.F.R. § 404.1527(c)(3), (4); *see also Newsome v. Colvin*, No. 7:14–cv–64, 2015 WL 5472943, at *5 (E.D. Ky. Sept. 16, 2015); *Ellars v. Colvin*, No. 2:14–cv–2050, 2015 WL 4538392, at *3–4 (S.D. Ohio July 27, 2015). The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions. *See e.g., Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549–50 (6th Cir. 2014); *Fry v. Comm'r of Soc. Sec.*,

476 F. App'x 73, 75–76 (6th Cir. 2012).

For all the above reasons, Plaintiff's claim regarding the medical opinions in the record is rejected.

### B. Credibility

Plaintiff finally contends that the ALJ used meaningless "boilerplate language" to evaluate her credibility, when he stated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(PageID.42, 592–93). Where a claimant contends that the ALJ made only a "boilerplate" credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015). Here, the ALJ gave specific reasons for discounting Plaintiff's credibility with respect to her claims that she is disabled due to her back, right knee, and hip pain, as well as limited movement on her left side of the body. (PageID.41–44.) The ALJ closely evaluated the record and explained why such did not support Plaintiff's allegations. The Court finds the ALJ's analysis to be thorough and supported by substantial evidence. Accordingly, Plaintiff's claim of error is denied.[3]

---

[3] The Court notes that interspersed throughout Plaintiff's brief are short allusions to additional arguments that the Court finds Plaintiff has waived—for example, that the ALJ's determination that Plaintiff could return to work is without substantial evidence, and that the ALJ should have found Plaintiff disabled at step five under the medical vocational guidelines. These issues are waived because Plaintiff has failed to develop these arguments or provide legal authority beyond brief conclusory phrases. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is **AFFIRMED.**  A separate judgment shall issue.


Dated:  August 18, 2016                                                      /s/ Janet T. Neff
                                                                             JANET T. NEFF
                                                                             United States District Judge